**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| FORUM ON OPEN ACCESS TO GOVERNMENT RECORDS INC., | § § § | Civil Action No.:  3:25-CV-02034-B |
| Plaintiff, | § § | |
| v. | § § | |
| DALLAS COUNTY HISTORICAL FOUNDATION, d/b/a THE SIXTH FLOOR MUSEUM AT DEALEY PLAZA, and NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF FORUM ON OPEN ACCESS TO GOVERNMENT RECORDS INC.'s RESPONSE AND BRIEF IN OPPOSITION TO THE SIXTH FLOOR MUSEUM'S MOTION TO DISMISS**

Plaintiff FORUM ON OPEN ACCESS TO GOVERNMENT RECORDS INC. ("Plaintiff" or "Forum") submits Plaintiff's Response and Brief in Opposition to Dallas County Historical Foundation d/b/a The Sixth Floor Museum's ("Museum" or "Defendant") Motion to Dismiss. For the reasons set forth in the accompanying brief, the Court should deny the motion.

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND................................................................................ 2

III.   LEGAL STANDARD........................................................................................... 4

IV.    ARGUMENT ........................................................................................................ 5

    A.     An Actual Case or Controversy Exists Between the Parties........................................ 5

        1.     Plaintiff Has Published 73 Allegedly Infringing Frames............................................ 5

        2.     The Publication of 73 Zapruder Frames Allegedly Copyrighted by the Museum Makes the Parties Legally Adverse ............................................................................................ 7

    B.     The Dispute Is of Sufficient Immediacy and Reality.................................................... 9

    C.     Plaintiff Has Standing to Seek a Declaratory Relief Judgment .................................. 10

        1.     Plaintiff Has Alleged Concrete Injury-in-Fact......................................................... 10

        2.     Plaintiff's Injuries Are Fairly Traceable to the Museum's Assertions of Copyright............ 11

        3.     Plaintiff's Injuries Are Redressable by Declaratory and Injunctive Relief .......................... 11

    D.     The Court Should Exercise Its Discretion Under the Declaratory Judgment Act to Retain Jurisdiction ........................................................................................................... 12

    E.     Plaintiff Has Plausibly Alleged Multiple Independent Bases for Relief ................................ 12

        1.     The Zapruder Film Copyright Is Invalid Because the Existing Film is an Altered Version and Not Original ........................................................................................................ 13

        2.     Defendant's Predecessor Intentionally Waived Copyright in Frames 207-212.................... 18

        3.     Failing to Disclose that Frames 154-157 and 207-212 Are Not Original and Misstating the Duration Constitutes Fraud on the Copyright Office .................................................. 19

        4.     Time, Inc. Abandoned the Copyright By Giving it Away for $1 After Widespread Unauthorized Dissemination ............................................................................... 20

        5.     The Museum Could Never Have Obtained the Copyright Because the 1975 and 1999 Transfers Were Defective ................................................................................. 21

6.    The Merger Doctrine Bars Copyright in the Zapruder Film Because It Merely Records Historical Fact.................................................................................................................. 22

7.    The Zapruder Copyright is Invalid Because it is Being Used to Suppress Facts ................. 23

8.    Plaintiff Has Plausibly Alleged Fair Use ................................................................... 24

F.    Plaintiff Has Plausibly Alleged a FOIA Claim Against NARA ................................................. 24

1.    The Museum Cannot Move to Dismiss Claims Not Asserted Against It ............................ 24

2.    Plaintiff States a Valid FOIA Claim Against NARA ........................................................... 24

G.    Joinder of the FOIA and Copyright Claims Is Proper and Necessary ...................................... 24

V.    CONCLUSION ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Supreme Court Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)..........................................................................................4

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539, 559 (1985)........................................................................................23

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)......................................................................1-2, 4-5, 7, 9

*Virginia v. Am. Booksellers Ass'n*,
484 U.S. 383 (1988)................................................................................................10

**Circuit Court Cases**

*Billy-Bob Teeth, Inc. v. Novelty, Inc.*,
329 F.3d 586 (7th Cir. 2003) .................................................................................22

*Hoehling v. Universal City Studios, Inc.*,
618 F.2d 972 (2d Cir. 1980)...................................................................................23

*Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*,
946 F.3d 649 (5th Cir. 2019) ...........................................................................9, 11

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ..................................................................................4

*Los Angeles News Service v. Tullo*,
973 F.2d 791 (9th Cir. 1992) .................................................................................22

*Morrissey v. Procter & Gamble Co.*,
379 F.2d 675 (1st Cir. 1967)..................................................................................22

*Ribbon & Trimming, Inc. v. Little*,
51 F.3d 45 (5th Cir. 1995) .....................................................................................14

*Rosemont Enters., Inc. v. Random House, Inc.*,
366 F.2d 303 (2d Cir. 1966)...................................................................................23

*Rowan Cos., Inc. v. Griffin*,
876 F.2d 26 (5th Cir. 1989) .....................................................................................5

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
691 F.3d 182 (2d Cir. 2012)...................................................................................12

**Circuit Court Cases (Cont'd)**

*Seiler v. Lucasfilm, Ltd.*,
   808 F.2d 1316 (9th Cir. 1986) .......................................................................14, 17

*St. Paul Ins. Co. v. Trejo.*,
   39 F.3d 585 (5th Cir. 1994) ...................................................................................11

*Texas v. W. Pub. Co.*,
   882 F.2d 171 (5th Cir. 1989) ...................................................................................5

*Torres-Negron v. J & N Records, LLC*,
   504 F.3d 151 (1st Cir. 2007)..................................................................................19

*Vantage Trailers, Inc. v. Beall Corp.*,
   567 F.3d 745 (5th Cir. 2009) .................................................................................11

*Weisberg v. U.S. Dep't of Justice*,
   631 F.2d 824 (D.C. Cir. 1980).................................................................................25

*Wembley, Inc. v. Superba Cravats, Inc.*,
   315 F.2d 87 (2d Cir. 1963)......................................................................................6

**District Court Cases**

*AARP v. 200 Kelsey Assocs., LLC*,
   2009 U.S. Dist. LEXIS 969 (S.D.N.Y. Jan. 8, 2009)...............................................4

*Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*,
   855 F. Supp. 2d 615 (N.D. Tex. 2012) ...................................................................4

*Lin's Waha Int'l Corp. v. Tingyi (Cayman Islands) Holding Corp.*,
   2018 U.S. Dist. LEXIS 210663, 2018 WL 6573482 (E.D.N.Y. Dec. 13, 2018)...................6, 9

*MMS Trading Co. PTY Ltd. v. Hutton Toys, LLC*,
   2021 U.S. Dist. LEXIS 60376 (E.D.N.Y. Mar. 29, 2021).......................................12

*Time Inc. v. Bernard Geis Assocs.*,
   293 F. Supp. 130 (S.D.N.Y. 1968) ...................................................... 1-2, 18, 23

**State Court Cases**

*Allhusen v. Caristo Construction Corp.*,
   303 N.Y. 446 (1952) ...............................................................................................22

**Statutes, Regulations, and Rules**
Federal Rule of Civil Procedure 12(b)(6) ...............................................................4, 12
Declaratory Judgment Act, 28 U.S.C. § 2201(a).................................................2, 11, 20

**Statutes, Regulations, and Rules (Cont'd)**

Freedom of Information Act, 5 U.S.C. § 552 ........................................................................ *passim*

**Other Authorities**

1 Nimmer on Copyright § 1.10[C][2], at 1-81–1-84 ...................................................................22

## I.    INTRODUCTION

The Museum moves to dismiss on the grounds that there is no case or controversy, that Plaintiff's challenges to the validity of the Zapruder copyright fail as a matter of law, and that Plaintiff improperly joined claims against the Museum with its Freedom of Information Act ("FOIA") claims against the National Archives and Records Administration ("NARA"). Each of these arguments fails.

The Museum's principal contention, that no case or controversy exists because it has not explicitly threatened to sue, ignores the controlling standard. The Supreme Court has explained that the question is whether the facts alleged show "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Plaintiff has published a commercial book reprinting 73 (seventy-three) Zapruder frames that the Museum asserts are copyrighted. Plaintiff twice requested permission to license the Zapruder materials and specifically asked that Museum to covenant not to sue and to stop interfering with Plaintiff's FOIA requests. The Museum refused. That refusal leaves Plaintiff publishing under the shadow of potential infringement litigation. Refusal to commit not to sue confirms the existence of an actual controversy.

The boundaries of this dispute are well defined. Plaintiff is publishing and intends to continue publishing a book on Amazon.com that publishes Zapruder frames arguing that they are altered; the Museum asserts exclusive ownership of those frames and refuses to disclaim enforcement. This posture mirrors the dispute in *Time Inc. v. Bernard Geis Assocs.*, 293 F. Supp. 130 (S.D.N.Y. 1968), where Time, Inc. sued to enforce its copyright in the Zapruder film and the defendant publisher raised copyright invalidity and fair use as defenses. The legal questions presented here—whether the Zapruder film is protected by copyright and whether Plaintiff's use is fair are precisely those confronted in *Time v. Geis*.

The Museum also attacks the substance of Plaintiff's claims for copyright invalidity and/or declaration of fair use. However, the Museum cannot contradict Plaintiff's well-pled allegations at the pleading stage. Each of these counts are independent bases for finding a registration invalid, unenforceable, or fair use, and Plaintiff properly invokes them under the Declaratory Judgment Act.

Finally, the Museum seeks dismissal of Plaintiff's FOIA claims against NARA, a federal agency. This improper motion underscores the parties' legal adversity. By asking this Court to dismiss claims not directed at itself, but directed solely at the federal government, the Museum has placed itself squarely in opposition to Plaintiff's statutory rights under FOIA. The Museum cannot deny that its conduct creates adversity and the dispute is immediate, real, and concrete.

## II.    FACTUAL BACKGROUND

The Forum on Open Access to Government Records, Inc. ("Forum") is an organization dedicated to ensuring public access to government records. Dkt. 1 ("Compl.") ¶ 32. The Forum has obtained over 100 documents from the National Archives regarding the Zapruder Film and published them on ZapruderFilm.com. *Id*. Plaintiff also published a book examining the evidence that the existing film is an altered version. *Id*. at ¶¶ 5-6.

The Zapruder film is possibly the most significant record of the JFK assassination because it is said to contain the most complete visual representation and the government heavily relied on it in its investigation. *Id*. at ¶¶ 36-42. However, Time, Inc. suppressed the film from the American people and lied about what the film showed during its entire period of ownership. *Id*. at ¶¶ 51-63. When Time, Inc. was caught, it gave away the film for $1. *Id*. at ¶¶ 69-79.

It was recently revealed through interviews with former government officials that the existing film is an altered version of Mr. Zapruder's original. ¶¶ 96-101, 114-119. Unlike the story previously told, it is not an original film developed in Dallas. *Id*. at ¶¶ 96-98. Instead, it is an altered version made at a top-secret CIA/Kodak photo lab in Rochester, New York. *Id*. at ¶¶

PLAINTIFF'S OPPOSITION TO THE
MUSEUM'S MOTION TO DISMISS                    2                    3:25-CV-02034-B

98-101. The most sophisticated technical study to date of the film also determined that the film is altered. *Id*. at ¶¶ 102-126.

Defendant claims to own the copyright to the film and has consistently asserted exclusive rights. *Id*. at ¶ 28. Plaintiff sought permission to use portions of the film in April 2025. On April 3, 2025, Plaintiff sent a letter requesting permission to publish the Zapruder frames in Plaintiff's book and requesting that the Museum commit to not sue Plaintiff for its publishing of Zapruder frames. *Id*. at ¶ 216 (citing Exhibit J, Dkt. 4-9). On April 15, 2025, Defendant responded by sending a letter to Plaintiff denying its request for permission to publish Zapruder frames and for access to materials in the National Archives, and ignoring Plaintiff's request to commit to not sue for infringement. *Id*. at ¶¶ 218 (citing Exhibit K, Dkt. 4-10). The Museum said that Plaintiff's request was in "bad faith." *Id*. Plaintiff again asked for permission from the Museum on April 23, 2025. *Id*. at 222. The Museum responded that requests for permission should go through the Museum's website. *Id*. at ¶ 223. On April 24, 2025, Plaintiff again requested permission through the website, but the Museum never responded. *Id*. at ¶¶ 224-227.

On May 6, 2025, the Forum published its book on Amazon.com containing 73 Zapruder frames and commentary about the Zapruder film. *Id*. at ¶¶ 5-6; The book is called *SCAM: The Zapruder Copyright -- How the Sixth Floor Museum Continues the Coverup* and is attached to the Complaint as Exhibits A-1, A-2 (Dkt. 3-1, 3-2). The book contains the latest developments about the film and argues that the existing film is an altered version, and not an original. Compl. ¶¶ 8-13. Plaintiff alleges that the Museum is participating in the coverup by concealing previous alterations of evidence and not letting anyone who believes the film is altered gain access to the film. *Id*. at ¶¶ 133-143, 218 (denying Plaintiff's requests for access and accusing Plaintiff of "bad faith"). The Forum intends to continue publishing, distributing, and analyzing the film as part of its mission to make assassination records accessible to the public *Id*. at ¶ 14.

PLAINTIFF'S OPPOSITION TO THE
MUSEUM'S MOTION TO DISMISS                 3                 3:25-CV-02034-B

The Forum further alleges that Defendant's purported copyright is invalid on multiple independent grounds. First, the film was materially altered before registration, meaning the registered work is not the authentic work created by Abraham Zapruder and thus lacks the originality required for copyright protection. *Id*. at ¶¶ 70–76. Second, Defendant cannot establish that all of the previous transfers of the film are valid. *Id*. at ¶¶ 77–84. Third, the rights were abandoned when Time failed to prevent widespread dissemination of the film, including unauthorized broadcast and publication, and ultimately giving away the film for $1. *Id*. at ¶¶ 85–92. Fourth, the Zapruder film is uncopyrightable under the merger doctrine, as it is inseparable from the historical events it depicts and merely records facts of the assassination. *Id*. at ¶¶ 93–98. Finally, Defendant's continued assertion of copyright is invalid because it suppresses access to historical truth, undermining the public's ability to understand and evaluate a defining moment in American history. *Id*. at ¶¶ 99–104.

Even if the copyright were valid, Plaintiff sufficiently alleges that its uses are protected as fair use. The Forum's publication and analysis of the Zapruder film are transformative and serve the vital public interest in research, education, and transparency regarding the assassination of President Kennedy. *Id*. at ¶¶ 322–332.

Plaintiff also challenges the actions of NARA. The Forum submitted FOIA requests for records that should have been on NARA's website because they are commonly requested, but NARA wrongfully withheld them. *Id*. at ¶¶ 333–345.

### III.    LEGAL STANDARD

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's amended] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind*., 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (citing *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.    ARGUMENT

### A.    An Actual Case or Controversy Exists Between the Parties

Defendant argues there is no case or controversy merely because it has not expressly threatened to sue Plaintiff. But that argument is foreclosed by *MedImmune*, which held that a declaratory judgment plaintiff need not "bet the farm" to expose itself to liability before seeking relief. 549 U.S. at 129. *MedImmune* "lowered the threshold" for establishing the existence of an actual case or controversy in intellectual property-related declaratory judgment cases. *AARP v. 200 Kelsey Assocs., LLC*, No. 2009 U.S. Dist. LEXIS 969, 2009 WL 47499, at *6 (S.D.N.Y. Jan. 8, 2009). Previously, a plaintiff was required to have "reasonable apprehension of imminent suit." *Id*. After *MedImmune*, "so long as '[t]he factual and legal dimensions of the dispute are well defined' and 'nothing about the dispute would render it unfit for judicial resolution,' jurisdiction is not defeated by a party's decision to refrain from taking some action and thus 'make[] what would otherwise be an imminent threat [of suit] at least remote, if not nonexistent.'" *Id*. (quoting *MedImmune*, 549 U.S. at 128, 137); *AARP*, 2009 U.S. Dist. LEXIS 969, 2009 WL 47499, at *9 (if "a party has produced prototypes or samples of the allegedly infringing products, begun soliciting — and advertising to — potential customers, or otherwise invested significant sums of money in preparation for producing the goods, the case or controversy requirement is likely to be satisfied.").

### 1.    Plaintiff Has Published 73 Allegedly Infringing Frames

For there to be an actual controversy in a copyright case, "the plaintiff must show that it has actually published or is preparing to publish the material that is subject to the defendant's copyright and that such publication places the parties in a legally adverse position." *Texas v. W. Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989).

On May 6, 2025, Plaintiff published a commercial book discussing and reprinting 73 Zapruder frames. Compl. ¶ 5. The book is called *SCAM: The Zapruder Copyright – How the Sixth Floor Museum Continues the Coverup*, and is attached to the Complaint as Exhibit A-1 and A-2 (ECF No. 3-1, 3-2). *Id*. In numerical order, Plaintiff's book publishes Zapruder frames 1-4, 131-135, 144, 154-157, 166, 174-177, 193, 201, 202, 207-212, 216, 219, 220, 221, 228, 237, 244, 262, 265, 269, 273, 276, 277, 289, 294, 304, 311-317, 320, 321, 323, 327, 328, 335, 337, 386, and 14 frames of Zapruder's employees in Dealey Plaza prior to the frame called "frame 1." Compl. ¶ 7; Exhibit A-1, A-2. Defendants assert that the Museum's copyright protects each of these frames. *Id*.

Whether the Museum's copyright prevents Plaintiff from publishing its book reprinting 73 frames claimed to be covered by the Museum's copyright or whether that publishing is fair use is a well-defined dispute. Whether the copyright is valid as to these frames and whether Plaintiff's commercial publication constitutes fair use are discrete issues that can be litigated and decided. *See Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) ("A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop."); *cf. Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 90 (2d Cir. 1963) ("where there is no actual manufacture, use or sale, and no immediate intention and ability to practice the invention, there is no justiciable [patent] controversy").

The facts here strongly parallel those in a persuasive case from out of circuit, *Lin's Waha Int'l Corp. v. Tingyi (Cayman Islands) Holding Corp.*, No. 17-cv-00773 (AMD) (ST), 2018 U.S. Dist. LEXIS 210663, 2018 WL 6573482 (E.D.N.Y. Dec. 13, 2018), where the court upheld a declaratory judgment counterclaim for copyright invalidity despite the absence of an infringement suit. There, the plaintiff argued that no "actual controversy" existed because it had not threatened to enforce its copyrights. The court rejected that argument, holding that "Count

VII presents an actual controversy" because the parties' rights to use the chef image and related marks were directly adverse, and "the factual and legal dimensions of the dispute are well defined." *Lin's Waha*, 2018 U.S. Dist. LEXIS 210663, 2018 WL 6573482 at *7–9. The court emphasized that the absence of a covenant not to sue preserved the controversy: unlike in cases where such covenants eliminated coercive force, Lin's Waha "made no such promise," leaving it "capable of taking some action that threatens to damage" its opponent. *Id.* at *8–9. *Lin's Waha* is persuasive authority because here the dispute is similarly well-defined, the Museum refuses to covenant not to sue, and remains capable of bringing a copyright action in the future.

### 2. The Publication of 73 Zapruder Frames Allegedly Copyrighted by the Museum Makes the Parties Legally Adverse

The publication by Plaintiff of dozens of frames that the Museum claims are covered under their ownership of the Zapruder film copyright that it claims to hold puts it directly legally adverse to Plaintiff, whose interests lie in publishing, advertising for, and selling its book. The Museum opposes Plaintiff's publishing of Zapruder frames in support of arguing that the film is altered. Compl. ¶ 218.

#### a. The Museum Cut Off All Licensing Negotiations after it learned Plaintiff's View that the Zapruder film is not Original

Initially, the Museum unilaterally granted Plaintiff a license to the frames it used on its website.[1] However, once the Museum learned Plaintiff's view that the Zapruder film is not original, the Museum's posture shifted. On April 3, 2025 and April 24, 2025, Plaintiff requested permission to access Zapruder materials and publish them in its book. *Id.* at ¶¶ 216-228. The Museum denied the first request directly, and directed any future requests be submitted through the Museum's website. *Id.* at ¶ 223.

---

[1] See ECF No. 27 at p. 10, *Forum v. Dallas County*, No. 3:24-cv-02299-B.

PLAINTIFF'S OPPOSITION TO THE
MUSEUM'S MOTION TO DISMISS               7               3:25-CV-02034-B

The Museum's accusation that Plaintiff is acting in "bad faith" confirms the parties' legal adversity. *See* Museum's April 15, 2025 letter at Dkt. 4-10 ("Your request…to support the Forum's opinion that 'the copyright in the Zapruder film should be declared invalid.' This request indicates that your request for a license is being made in bad faith."). Plaintiff is not acting in "bad faith" merely because Plaintiff believes that the existing Zapruder film is not an original film.

On April 24, 2025, Plaintiff submitted another request through the Museum's website specifically referencing Plaintiff's book indicating Plaintiff's opinions, but the Museum never responded. Compl. ¶¶ 224-228. Plaintiff has been waiting for permission for over five months.

        b.  The Museum Refused to Commit Not to Sue

The Museum refused to covenant not to sue when explicitly asked. *Id*. at ¶¶ 216-228. This leaves Plaintiff to choose between abandoning its project or continuing under the cloud of potential litigation—exactly the kind of concrete legal dispute that *MedImmune* and its progeny recognize as justiciable. Plaintiff's letter to the museum requested the Museum "Confirm that the Museum promises not to sue Plaintiff for any previous [or] future infringement and for selling its book and website access to Plaintiff's opinions discussed above and the publishing of all frames 1-486 from any source" and also requested to "Confirm that the Museum promises not to sue Plaintiff for any previous or future marketing, distributing and/or publishing of films that contain the Zapruder film and/or frames." *Id*. at. ¶ 216, Exhibit J, ECF No. 4-9.

        c.  The Museum Will Not Permit Plaintiff's Advertising

The Museum informed Plaintiff that it has a policy of no advertising using Zapruder frames. However, Plaintiff has used Zapruder frames in advertising and intends to continue doing so in the future. *Id*. at ¶ 234.

           d.       The Museum is Interfering with Plaintiff's FOIA Rights

The Museum has gone beyond asserting its own rights by seeking dismissal of Plaintiff's FOIA claims against NARA. Compl. ¶¶ 207–209. Those claims are directed solely at a federal agency, yet the Museum has attempted to defeat them. This extraordinary step underscores the extent of the Museum's interference: it does not merely assert copyright defensively, but affirmatively attempts to block Plaintiff from enforcing his rights against the government. Plaintiff has asked the Museum to withdraw its objections to Plaintiff's FOIA requests, but the Museum refuses to do so.

Adversity may arise from a private party's relationship with a federal agency. *See Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655-56 (5th Cir. 2019) (finding traceability where a federal agency's actions were shaped by third-party demands). In *Inclusive Communities*, the Fifth Circuit held that plaintiffs could establish standing because the federal government had effectively acted in response to private actors' preferences. The same dynamic is present here. The Museum's assertion of copyright operates as a gatekeeping demand: NARA has denied disclosure of Zapruder materials not based on an independent statutory exemption, but because the Museum has withheld permission. Compl. ¶¶ 200–203. That relationship transforms the Museum's private copyright claims into the operative cause of Plaintiff's FOIA injury.

By refusing to commit not to sue, leveraging its copyright claim to control government responses, and moving to dismiss FOIA claims directed at NARA, the Museum has placed itself in direct and immediate opposition to Plaintiff's statutory rights. This interference confirms that the parties' legal interests are adverse

**B.**      **The Dispute Is of Sufficient Immediacy and Reality**

The immediacy requirement is met because since May 6, 2025, Plaintiff is actively printing and selling his book on Amazon.com with the contested Zapruder frames. *Id*. at ¶ 5. The

Museum refuses to disclaim enforcement and interferes with Plaintiff's attempts to obtain copies under FOIA from the National Archives. *Id*. at ¶¶ 216-228. Here, as in *Lin's Waha*, the Museum's refusal to covenant not to sue, combined with Plaintiff's ongoing commercial use, establishes a controversy of "sufficient immediacy and reality" to warrant declaratory relief. (citing *MedImmune*, 549 U.S. at 127).

### C.      Plaintiff Has Standing to Seek a Declaratory Relief Judgment

#### 1.      Plaintiff Has Alleged Concrete Injury-in-Fact

Defendant argues that Plaintiff lacks standing because its injuries are speculative and hypothetical. That argument ignores the present, concrete harms Plaintiff has alleged and experienced. Plaintiff published a commercial book containing 73 Zapruder frames that the Museum asserts are copyrighted. Compl. ¶¶ 5, 229-235. The Museum's continued assertion of copyright forces Plaintiff to either cease publication and advertising or continue publishing and risk liability. This is not a hypothetical dispute; it is a real-world controversy involving an existing, allegedly infringing work.

The Museum's viewpoint discrimination in its licensing process reinforces the injury. The Museum first maintained that the only issue with Plaintiff's requests were that Plaintiff had never asked for permission. *Id*. at ¶¶ 214-15. Then, Plaintiff submitted two license requests, on April 3, 2025 and April 24, 2025, which were first denied and then ignored. *Id*. at ¶¶ 216-228. The Museum cut off communications once it became clear that Plaintiff's book would question the authenticity of the Zapruder film. *Id*. By denying licenses, access and refusing to respond, the Museum has concretely harmed Plaintiff's ability to publish, promote, and expand its book. *Id*. at ¶ 343; *MedImmune,* 549 U.S. at 129 (party need not "bet the farm" by risking the entire business before seeking relief). Plaintiff's allegations satisfy this standard.

### 2. Plaintiff's Injuries Are Fairly Traceable to the Museum's Assertions of Copyright

The Museum is the direct cause of Plaintiff's injury. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988) (plaintiffs had standing because law caused them to refrain from protected expression). The Museum claims ownership of the Zapruder film and enforces that claim by refusing licenses, blocking FOIA requests, and denying access to researchers with dissenting viewpoints. Compl. ¶¶ 216-228, 333-344. Plaintiff's publication of allegedly infringing material in its book has drawn no disclaimer of enforcement from the Museum. *Id*. at ¶¶ 216-228. Instead, the Museum has refused to commit to not suing Plaintiff, despite being asked to do so. *Id*.

### 3. Plaintiff's Injuries Are Redressable by Declaratory and Injunctive Relief

Plaintiff seeks a declaration that the Zapruder film is not protected by copyright on several independent theories, or, alternatively, that Plaintiff's use is fair use, as well as an injunction preventing the Museum from asserting its invalid copyright against Plaintiff. Such relief would directly address the uncertainty facing Plaintiff from publishing, promoting, and expanding its book while under the threat of the Museum's copyright.

Declaratory relief is especially appropriate where a copyright claimant refuses to disclaim enforcement while a plaintiff has concrete plans to publish allegedly infringing material. *See Vantage Trailers, Inc. v. Beall Corp*., 567 F.3d 745, 748–49 (5th Cir. 2009) (standing where copyright holder's assertions created uncertainty for competitor's planned conduct). Here, Plaintiff published a commercial book and intends to release expanded editions containing additional Zapruder frames. Compl. ¶¶ 190-193. A declaration and injunction would redress Plaintiff's injuries by removing the legal cloud hanging over its current and future work. *See Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019).

("The relief sought needn't completely cure the injury, however; it's enough if the desired relief would lessen it.")

D.    **The Court Should Exercise Its Discretion Under the Declaratory Judgment Act to Retain Jurisdiction**

The *Trejo* factors overwhelmingly favor exercising jurisdiction over this declaratory-judgment action. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994). First, there are no parallel state-court proceedings. Second, nothing in the record suggests Plaintiff filed this action in an improper manner; rather, Plaintiff seeks to resolve concrete disputes over copyright validity and FOIA access. Third, permitting Plaintiff to litigate the copyright and FOIA claims together does not create inequities. To the contrary, joinder ensures that both disputes—each turning on the Museum's assertion of copyright—are resolved in a single forum, avoiding inconsistent rulings. Fourth, this Court is not an inconvenient forum; indeed, it is the only forum where both NARA and the Museum can be joined in one action. Finally, deciding this case promotes judicial economy. Severing the claims, as the Museum urges, would fracture interlocking issues of copyright ownership and FOIA disclosure, forcing duplicative litigation in multiple courts. On balance, every *Trejo* factor confirms that the Court should retain jurisdiction over this declaratory-judgment action.

E.    **Plaintiff Has Plausibly Alleged Multiple Independent Bases for Relief**

Defendant argues that Plaintiff fails to state a claim for copyright invalidity, contending that none of Plaintiff's asserted grounds are legally cognizable. However, the applicable standard under Rule 12(b)(6) is whether the Complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the Museum's motion should be denied because it improperly attempts to contradict well pled and historically supported allegations.

### 1. The Zapruder Film Copyright Is Invalid Because the Existing Film is an Altered Version and Not Original

Defendant asserts that originality is presumed upon registration and that Plaintiff has not overcome this presumption. However, "while [a] certificate of copyright registration is prima facie evidence of ownership of a valid copyright, [a party] may rebut that presumption." *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012)). Evidence that the work lacks originality can rebut the presumption of validity. *See MMS Trading Co. PTY Ltd. v. Hutton Toys, LLC* , No. 20-CV-1360 (MKB), 2021 U.S. Dist. LEXIS 60376 , 2021 WL 1193947 , at * 7 (E.D.N.Y. Mar. 29, 2021) ("Plaintiff has alleged facts sufficient to support a plausible inference that the subject matter of Defendant's copyright registration lacks the originality required to warrant copyright protection.")

> a. Plaintiff Plausibly Alleges that the Existing Film is An Altered Version, Not the Original Taken by Zapruder

Defendant argues that "even if the original physical copy of the Zapruder Film were to be altered, repaired, or damaged, these actions would not de facto invalidate or waive the copyright in the Zapruder Film." However, the Museum overlooks Plaintiff's core allegations – that the version of the Zapruder film registered for copyright in 1967 is not the film that was made by Abraham Zapruder. In fact, many frames in the existing film could not have been made by Zapruder's camera at all. Lacking originality, the film is not entitled to protection.

Plaintiff plausibly alleges that the existing Zapruder film is an altered, and not original version. Compl. ¶¶ 94-171. This is confirmed by CIA witnesses, expert analysis, and plain viewing of the film. *Id*. Interviews of former CIA officials revealed that two teams (secretly from one another) analyzed *two different* "Zapruder films" on the weekend following the assassination. *Id*. at ¶ 97. Only one of those films survives today. *Id*. at ¶ 98. The version that exists today is the one analyzed by the CIA in the second of the two secret operations. *Id*.

The CIA disclosed the frames it enlarged in the second operation to the National Archives. *Id*. That film is not the original one that was developed by Zapruder in Dallas. *Id*. The existing Zapruder film is an altered version that was developed at a top-secret Kodak/CIA facility called *Hawkeyeworks* in Rochester, New York. *Id*. Evidence of the true original Zapruder film was last seen by CIA officials in 1975, and the current whereabouts of the Dallas original are unknown. *Id*. at ¶¶ 99-101. Alteration of the film was accomplished using an Oxberry aerial imaging stand, whereby selected frames of an original film could be processed one by one, artwork could be added by painting on a glass screen, and then the combined scene could be rephotographed by another camera, thereby creating a "newly altered" film that could be masqueraded as an original. *See* Exhibit A-1, at pp. 49-50; *Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 48 (5th Cir. 1995) (evidence was sufficient to show that the copyrights were invalid).

        b.      Evidence of Alteration Can Be Plainly Observed in Frames 154-157 and 207-212

Certain frames can be observed even by laypeople to lack originality upon plain viewing. *See* Exhibit A, Dkt. 3-1 at pp. 33-43. For instance, anyone viewing two sets of frames, 154-157, and 207-212, for which Time, Inc. admitted its technicians lost and/or damaged, can see for themselves that they are not original. Compl. ¶ 247.



*Frame 212 Splits a Tree in Half*

Each of frames 154, 157, 207, and 212 are not single frames as would  be expected, but are actually two frames spliced together with thick black lines running through the middle of these frames. *Id*. at ¶ 248. Frame 212, reproduced above, "is perhaps the most blatantly altered image in the Zapruder film. Officially labeled as 'repaired,' it displays an impossible visual: a tree whose top and bottom halves are misaligned by several feet." *See* Exhibit A-1, at p. 43. That is just one example.

The original of frames 155-156 and 208-211 were lost. Compl. ¶ 249. Copies that were made prior to the damage are merely partial copies that are inferior and missing one-third of the original image. *Id*. at ¶ 249. Thus, there is no dispute that bona fide originals of 154-157 and 207-212 do not exist. It is plainly visible that these frames were not created in Zapruder's camera. *See Seiler v. Lucasfilm, Ltd*., 808 F.2d 1316, 1319 (9th Cir. 1986) (Defendants "claim[] that the [Plaintiff] infringed …originals, yet [Defendants] [have] no proof of those originals.)

        c.        Evidence Identified by Post-Production Experts

According to the most sophisticated study ever of the Zapruder film, an artificial black patch was added as a separate layer over the back of JFK's head. Compl. ¶¶ 102-113.



*Film Experts Discover Black Patch Concealing JFK Head Wound*

*See* Exhibit A-1, at pp. 84-91. Further, they identified an impossibly shaped red wound known as "the blob" that does not conform to the description of JFK's head wound as observed by one of the treating physicians with a superior vantage point, Dr. Robert McClelland. Compl. ¶¶ 120-132; Exhibit A-1, at pp. 80-83. Finally, according to Sydney Wilkinson and Dr. David Mantik, the Museum altered frame 317 and others to conceal that the black patch had been added. *Id*. at ¶¶ 132-142.

Next, the sequence of frames 131-133 cannot be original. *Id*. at ¶¶ 144-150; The transition displays a significant drop in the range of black values, indicating the section after the splice must have been a *subsequent generation* to the section before the splice. *Id*. at ¶ 147.

**Drop in RGB Range at 132/133**

*See the RGB Range Collapse in the Four Spectators' Clothes*

After the splice, these tonal differences collapse. Black clothing appears flatter, less detailed, and less nuanced. The richness of dark textures has vanished, replaced by a more uniform, compressed look.

*See* Exhibit A-1, at pp. 44-58. Further, the expected "light flash" after a mechanical camera stops and starts is also missing from this transition. *Id*. at ¶ 145. According to post-

PLAINTIFF'S OPPOSITION TO THE
MUSEUM'S MOTION TO DISMISS          16                    3:25-CV-02034-B

production film expert Ned Price, this sequence "would not happen in a camera." *Id*. at ¶ 147. The scene is also physically impossible on independent grounds, because when Zapruder starts his camera again at 133, he captures the exact same viewpoint as 131-132, showing the same twenty North Elm spectators in the exact same camera view. *Id*. at ¶ 149. This would have been impossible with a tripod, and Zapruder did not have a tripod. *Id*.

Further, scenes that are created in post-production, so called "blended frames," appear in the existing film. *Id*. at ¶¶ 162-171. These could not have been generated in a camera. *Id*. at ¶¶ 170-171.

d.    Other Evidence of Alteration

Physicist John Costella scientifically determined that the Stemmons Freeway sign could not have been filmed at the same time as the rest of the scenes because it lacks the expected pincushion distortion signature of Zapruder's camera. *Id*. at ¶¶ 151-155. Further, Costella demonstrated that the freeway sign lacks internal consistency from frame to frame by identifying two frames where the sign's poles are angled differently relative to the angle of the squares in the background. *Id*. at ¶¶ 156-157. Further, the sign's edge changes shape from rounded to slanted in frames 219-220, Jackie's hat that should be behind the sign appears *in front of* the sign, and then the sign reverts back to normal in 221. *Id*. at ¶ 158-160. The film also shows JFK's driver making impossibly fast head turns, suggesting frames were removed. *Id*. at ¶¶ 172-178; There are countless other anomalies identified that could not fit into one book. *Id*. at ¶ 143.

e.    Time, Inc. Could Not Have Deposited Original Copies at Registration in 1967 Because It Did Not Have Originals

The "certificate of registration [is] not prima facie evidence of a valid copyright" when the registration is not supported by the deposit of bona fide copies of the original work. *See Seiler*, 808 F.2d at 1322 (certificate of registration, which was based on deposited reconstructions rather than copies of original works, is irrelevant to the validity of the copyright

of the original work unless the "reconstructions are the same as the originals"). Plaintiff plausibly alleges that the frames 154-157 and 207-212 of the film that Time, Inc. registered and deposited with the Copyright Office in 1967 were not original. Compl. ¶¶ 236-255.

### 2. Defendant's Predecessor Intentionally Waived Copyright in Frames 207-212

With respect to frames 207-212, Plaintiff plausibly alleges that Time, Inc. intentionally released these into the public domain and waived any copyright protection. *Id*. at ¶¶ 257-261. Three years after damaging the film, in early 1967, Time, Inc. explained that its technician caused damage to the film in these frames on November 23, 1963. *Id*. at ¶ 259. However, besides admitting the damage, Time, Inc. did not provide any information about the destruction or how it crudely reassembled the damage at Frames 207 and 212 using adhesive and discarded frames 208-211. *Id*. at ¶ 260. Recognizing it did not possess the originals and only copies not containing the full image existed, Time, Inc. intentionally released the copyright to the public domain and expressly waived its copyright to Frames 207-212. *Id*. at ¶¶ 261-262. Defendant's predecessors omitted these frames from the commercial DVD. *Id*. at ¶ 263. The stipulation of facts signed by attorneys for Time, Inc. and filed in the court in *Time v. Geis* on May 1, 1968, stated: "On January 30, 1967, Zapruder frames Nos. 207 through 212 were publicly released without restriction on their use." Additionally, the release of those frames "for publication" was also announced by Editor George Hunt. Exhibit A-1, at p. 39 (citing Thompson, Josiah. *Six Seconds in Dallas: A Micro-Study of the Kennedy Assassination*. Bernard Geis Associates, 1967, pp. 215-216.) The Museum's copyright cannot exceed the interest held by its predecessors. Compl. ¶ 264. The Museum could never have received a transfer of a copyright on Frames 207-212 when its predecessor had already relinquished it to the public domain. *Id*. at ¶ 265.

**3.      Failing to Disclose that Frames 154-157 and 207-212 Are Not Original and Misstating the Duration Constitutes Fraud on the Copyright Office**

A party seeking to establish fraud on the Copyright Office "must establish that the application for copyright registration is factually inaccurate, that the inaccuracies were willful or deliberate … and that the Copyright Office relied on those misrepresentations." *Id*. at ¶ 270. Time, Inc. misrepresented that the film was original and intact at the time of registration in 1967. *Id*. at ¶ 272. Time registered the film as an original, but it failed to inform the Copyright Office that the originals to 154-157 and 207-212 were lost and/or damaged years prior in 1963. *Id*. The salvaged frames 154, 157, 207, and 212 are visibly "spliced" and "repaired" and contain large black lines through the area where two separate frames are attached. *Id*. at ¶ 248. Time's technician inexplicably discarded frames 155-156 and 208-211 and only inferior partial copies remain that are missing the left one-third of the image. *Id*. at ¶ 248. Missing frames 155-156 and 208-211 are omitted from the DVD of the Zapruder film sold commercially by MPI. *Id*. at ¶ 273.

Time, Inc. failed to disclose any of the facts about these frames to the Copyright Office. The misrepresentations were material and the Copyright Office relied on the misrepresentations. If Time, Inc. had disclosed that no originals existed in these frames, the Copyright Office would have found it to be material, and registration would have been refused as to those frames. *See Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 158 (1st Cir. 2007) ("[S]ubmission of something other than a 'copy' to satisfy the deposit copy requirement cannot be classified as an 'immaterial' mistake because the failure to submit a valid copy would affect the Copyright Office's issuance of a certificate"). Further, Time's registration stated that the film was a 10 second original work. It cannot even be explained today as to why Time stated the film was 10 seconds. The version on the Museum's website is over one minute long. Compl. ¶ 271. The Museum must correct these errors with the Copyright Office. Plaintiff will file a motion under 17

U.S.C. § 411(b)(2) to seek the Register's advice on whether the alleged inaccuracies, if known, would have caused refusal.

Time, Inc.'s failure to disclose that the film did not contain all the original frames was willful or deliberate. *Id*. at ¶ 275. At the time it registered in 1967, Time, Inc. was well aware that its technicians had damaged and lost several frames in 1963 and that four "frames" were actually two different half-frames glued together with thick black lines. *Id*. at ¶¶ 274-275. Besides that, Time, Inc. had to have known that these several frames were not original because it is obvious upon plain sight.

Further demonstrating that the misrepresentations are willful, the Museum could easily inform the Copyright Office of these inaccuracies in Time, Inc.'s registration today, but the Museum refuses to do so. *Id*. Defendant also refuses to reveal any information about why it believes these frames are original. *Id*. at ¶ 277. This is sufficient to allege Fraud on the Copyright Office.

Defendant argues that "fraud on the Copyright Office" is not a recognized cause of action under the Copyright Act and therefore must be dismissed. However, this misconstrues the nature of Plaintiff's claim. Plaintiff does not attempt to plead fraud as an independent tort. Rather, Plaintiff alleges fraud on the Copyright Office as one of the bases supporting declaratory relief that the Zapruder copyright is invalid and unenforceable. This approach is fully consistent with the Declaratory Judgment Act.

### 4. Time, Inc. Abandoned the Copyright By Giving it Away for $1 After Widespread Unauthorized Dissemination

Defendant argues that Plaintiff does not successfully allege abandonment because it does not identify a specific act of abandonment. However, the Museum overlooks that Plaintiff alleges that Time's refusal to enforce its copyright after the film was disseminated without authorization for a long period culminating in an unauthorized showing on national television, its attempt to

donate the film to the National Archives, and ultimately giving away the film for $1 in violation

of the contract constitutes abandonment. *Id*. at ¶¶ 284-288. These allegations are specific acts of

abandonment. Subsequent control asserted over the "copyright" by the Zapruder heirs does not

reverse Time's abandonment. *Id*. at ¶¶ 290-295.

### 5. The Museum Could Never Have Obtained the Copyright Because the 1975 and 1999 Transfers Were Defective

The Museum ignores that its claim to the copyright depends on the validity of a series of

prior transfers. Defendant relies on the presumption of validity afforded to copyright

registrations under 17 U.S.C. § 410(c), but that does not account for the numerous transfers that

the Museum's copyright ownership depends on. Without those transfers, the Museum has no

claim to the copyright. Copyright ownership depends on a valid transfer from the author or

successor in interest. 17 U.S.C. § 204(a) ("A transfer of copyright ownership… is not valid

unless an instrument of conveyance… is in writing and signed by the owner"). There are at least

two transfers that were ineffective.

First, Time, Inc. did not effectively transfer the copyright to the Zapruder heirs in 1975.

Compl. ¶¶ 299-300. The documents purporting to execute this transfer in the historical record are

either unsigned or contain illegible signatures. *Id*. at ¶ 300 (citing the historical April 4, 1975 and

April 9, 1975 transfer documents). For the transfers to be valid, they would have to be signed and

contain legible signatures.

Second, the transfers from Time, Inc. to the Zapruder heirs in 1975 and the 1999 transfer

to the Museum were invalid because they were not permitted under the terms of the 1963

Zapruder/Time, Inc. agreement. Mr. Zapruder bargained for and Time, Inc. was expected to pay

annual royalties to the Zapruder family only up to $25,000 per year for the length of the

copyright and all renewals. *Id*. at ¶ 301. Time could not alienate this commitment by selling the

film to the Zapruder heirs directly, as the Zapruder heirs were not allowed to "in any way dispose

of this contract or any of the payments specified herein or the proceeds hereof, nor to receive payment at any time other than as specified herein." Compl. ¶ 46 (referencing November 25, 1963 Contract at ¶ 7).[2] *See Allhusen v. Caristo Construction Corp*., 303 N.Y. 446, 452 (1952) ("When clear language is used, and the plainest words have been chosen, parties may limit the freedom of alienation of rights and prohibit the assignment.") (cleaned up).

This is sufficient to plausibly allege that the Museum did not receive the copyright because of invalid transfers. *See Billy-Bob Teeth, Inc. v. Novelty, Inc*., 329 F.3d 586, 591 (7th Cir. 2003) ("a chain of title must be established by written instruments").

### 6.    The Merger Doctrine Bars Copyright in the Zapruder Film Because It Merely Records Historical Fact

Defendant asserts that the Zapruder film is protectable because originality is a low bar and the film contains sufficient creative choices to qualify for protection. The issue, however, is not whether the original film exhibits originality. The issue under the merger doctrine is that copyright does not extend to works where expression is inseparable from fact. *See Morrissey v. Procter & Gamble Co*., 379 F.2d 675, 678–79 (1st Cir. 1967) (no copyright where idea could only be expressed in limited ways). This doctrine has particular force where historical events are recorded in unique form. The Museum entirely ignores that Professor Nimmer explains that the Zapruder film is the quintessential example of the merger doctrine. Compl. ¶¶ 308-310. When the copyrighted work is information necessary for the public to hold a "democratic dialogue," copyright must be limited and that information enters the public domain. *Id*. at ¶¶ 309-310. There is no substitute for the Zapruder film which was heavily relied by the government in the Warren Commission. *Id*. at ¶¶ 304-313. In such instances, the expression and idea are not dichotomous at

---

[2] *See* Text of the Contract Between Abraham Zapruder and Time, Inc. (*Life* Magazine) Signed by Abraham Zapruder and Richard Stolley, https://zapruderfilm.com/p/zapruder-film-contact-life-magazine-abraham-zapruder-richard-stolley (last visited September 25, 2025).

all but essentially a "unity", inseparable from one another." *Los Angeles News Service v. Tullo*, 973 F.2d 791, 795-96 (9th Cir. 1992) (citing Nimmer § 1.10[C][2] at 1 - 83-1 – 84).

### 7. The Zapruder Copyright is Invalid Because it is Being Used to Suppress Facts

Copyright is intended to increase and not to impede the harvest of knowledge. The rights conferred by copyright are designed to assure contributors to the store of knowledge a fair return for their labors. "We do not suggest the right not to speak would sanction abuse of the copyright owner's monopoly as an instrument to suppress facts." *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U. S. 539, 559 (1985). The law does not recognize private ownership of historical information, *See Hoehling v. Universal City Studios, Inc*., 618 F.2d 972, 978 (2d Cir.); Nimmer 2.11[A] (1986) ("nor does it enforce efforts to hoard, suppress, sell or license historical fact, or to govern who may and who may not disseminate it.)"

Plaintiff plausibly pleads a claim against the Museum for attempting to use the copyright to suppress access to information. President Trump's Executive Order regarding classification does not apply to the Zapruder frames being withheld on copyright grounds. Plaintiff alleges that the Museum asserts copyright precisely to suppress dissenting views and prevent independent verification of whether the Zapruder film was altered. Compl. ¶¶ 185-189; 216-228. The Museum initially granted Plaintiff licenses to frames on its website and then cut off communications in response to Plaintiff's requests for licenses after Plaintiff disclosed his view that the Zapruder film was altered. *Id*. This conduct plausibly shows copyright misuse to suppress historical facts. This inhibits crucial public debate contrary to the design of the copyright statute. *Id*. at ¶¶ 317-321. *See Rosemont Enters., Inc. v. Random House, Inc*., 366 F.2d 303, 311 (2d Cir. 1966) (copyright cannot be used "as an instrument of suppression.").

### 8.    Plaintiff Has Plausibly Alleged Fair Use

Even if the copyright were valid, Plaintiff plausibly alleges that its use is fair. Compl. ¶¶ 323-332. Plaintiff published 73 allegedly infringing Zapruder frames in its book, *SCAM: The Zapruder Copyright – How the Sixth Floor Museum Continues the Coverup*. *Id*. at ¶ 324. Plaintiff's work discusses the evidence examining whether it is truly the Zapruder out-of-camera original, as claimed by Defendants. Plaintiff uses 73 allegedly infringing frames in the context of that discussion. *Id*. at ¶ 324. This is nearly identical to the dispute in *Time v. Geis*, where the court recognized fair use. Fair use cannot be determined at the pleading stage.

### F.    Plaintiff Has Plausibly Alleged a FOIA Claim Against NARA

#### 1.    The Museum Cannot Move to Dismiss Claims Not Asserted Against It

The Museum's motion improperly seeks to dismiss claims that are not even asserted against it. This confirms not only the Museum's overreach but also the existence of a live controversy, as the Museum attempts to interfere with Plaintiff's claims against a government agency. The Museum has no standing to dismiss Plaintiff's claims against NARA.

#### 2.    Plaintiff States a Valid FOIA Claim Against NARA

The Museum further suggests that Plaintiff's allegations fail to state a FOIA claim. On the contrary, Plaintiff adequately alleges that NARA withheld copies of requested Zapruder frames from NARA's website on the basis that Plaintiff did not obtain the Museum's permission. *Id*. at ¶¶ 333–336. These frames should be accessible to Plaintiff on NARA's website because they are commonly requested records under FOIA's Electronic Reading Room provision. *Id*. at ¶¶ 337–345. Plaintiff appealed NARA's denial, but NARA failed to decide Plaintiff's appeal. *Id*. at ¶¶ 335–336. These allegations are sufficient to state a claim against NARA.

### G.    Joinder of the FOIA and Copyright Claims Is Proper and Necessary

Plaintiff's claims against both defendants here arise from the same nucleus of operative facts: Plaintiff's attempt to obtain and use public records under FOIA in the face of NARA's

rejections based on the Museum's assertion of copyright. *Id*. at ¶¶ 194–208. These intertwined allegations raise common questions of fact (whether the Museum's copyright is valid) and law (whether copyright can justify withholding under FOIA). Severing the claims would undermine judicial economy. *See Weisberg v. U.S. Dep't of Justice*, 631 F.2d 824, 830–31 (D.C. Cir. 1980) (contemplating copyright holders joined to FOIA cases).

## V.        CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Museum's motion to dismiss.

Dated: September 25, 2025                    Respectfully submitted,

**JAVITCH LAW OFFICE**

*/s/  Mark L. Javitch*
Mark L. Javitch
CA Bar No. 323729 (admitted *pro hac vice*)
mark@javitchlawoffice.com
----
3 East 3rd Ave., Ste. 200
San Mateo, CA 94401
(650) 781-8000 | Main
(650) 648-0705 | Fax

--and--

**CHAMPION LLP**

Austin Champion
Texas Bar No. 24065030
austin.champion@championllp.com
Ryan J. Reynolds
Texas Bar No. 24110268
ryan.reynolds@championllp.com
----
2200 Ross Avenue
Suite 4500W
Dallas, Texas 75201
214-225-8880 | Main
214-225-8881 | Fax

**COUNSEL FOR FORUM ON OPEN ACCESS
TO GOVERNMENT RECORDS INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2025, the foregoing was filed through the Court's electronic filing system and will be sent electronically to the parties via the Court's electronic filing system.

/s/ Mark L. Javitch
Mark L. Javitch