**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FORUM ON OPEN ACCESS TO GOVERNMENT RECORDS INC., <br><br> Plaintiff, <br><br> v. <br><br> DALLAS COUNTY HISTORICAL FOUNDATION, d/b/a THE SIXTH FLOOR MUSEUM AT DEALEY PLAZA, and NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, <br><br> Defendants. | Civil Action No. 3:25-cv-02034-B |

**DEFENDANT NATIONAL ARCHIVES AND RECORDS ADMINISTRATION'S**
**REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

Defendant National Archives and Records Administration ("NARA") respectfully submits this Reply in Support of its Partial Motion to Dismiss Plaintiff Forum on Open Access to Government Records Inc.'s ("Plaintiff" or "Forum") Original Complaint ("NARA's Motion") and states as follows.

### I.    Introduction

The crux of this case has nothing to do any alleged secrecy, transparency in public records, or any perpetuated conspiracy theories. As far as NARA is concerned, this case is about whether NARA satisfied its obligations under the Freedom of Information Act ("FOIA"). NARA's Motion is even more focused on whether Plaintiff's FOIA Action, as it was actually pleaded in Plaintiff's Original Complaint, is sufficient to (a) confer jurisdiction in this Court, and if so (b) state a claim for which this Court can grant relief. The answer to both questions is no.

Plaintiff FOIA Action requests only "that the Court enjoin [NARA] from failing to make the commonly requested records available for public inspection in an electronic format on its website." Compl., ECF 1 ¶ 345. Throughout its Response, however, Plaintiff asserts that it has also asked this Court for "an order requiring NARA to produce copies directly to Plaintiff." *See, e.g.*, Resp., ECF 30 at 7, 10, 12. Plaintiff's Original Complaint seeks no such relief. In fact, there is only one item in Plaintiff's Request for Relief addressed to NARA, and that is item K. Compl. at 54. Item K asks the Court to "enjoin the National Archives from withholding those records by failing to make them available for public inspection in an electronic format on their website." *Id.* Thus, as pleaded, the Complaint contains no request that the Court order NARA to produce the Zapruder Transparencies directly to Plaintiff. *Cf. Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215, 215 (6th Cir. 2000) ("Neither this court nor the district court is required to create [plaintiff]'s claims for him.").

## II.     Plaintiff Has Not Shown that this Court Possesses Jurisdiction to Provide the Relief Requested in Plaintiff's FOIA Action

As pleaded in the Original Complaint, Plaintiff's FOIA Action seeks only one remedy: an injunction requiring NARA to host the Zapruder Transparencies in the electronic reading room on NARA's website pursuant to 5 U.S.C. § 552(A)(2)(D). As Plaintiff notes, there is no controlling Fifth Circuit precedent on whether the FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B), confers jurisdiction to this Court to award the requested relief. Plaintiff relies heavily on *La Unión Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, No. 5:21-cv-71, 2023 WL 6014397 (S.D. Tex. June 12, 2023), but that is an unpublished opinion from a different Texas district court and therefore not binding on this Court. Thus, the choice facing this Court is whether to follow the precedent of the Ninth and Second Circuits or to follow the precedent of the DC Circuit, which handles more FOIA claims than all other circuits combined. *See, e.g.*, David Nayer, *Analytics Reveal Freedom*

*of Information Act Litigation Over a Decade*, LAW STREET (July 31, 2025), https://lawstreetmedia.com/insights/analytics-reveal-freedom-of-information-act-litigation-over-a-decade/ ("Approximately 7,000 [FOIA] cases have been filed in the last decade. Over half, unsurprisingly, have been filed in the District of Columbia District Court.").

In NARA's view, the DC Circuit's interpretation is correct. Under 5 U.S.C. § 552(a)(4)(B), this Court has "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," not from the public at large. The statute thus instructs a district court, upon determining that the agency erred in declining to make documents available to a requester, to issue an injunction requiring the agency to do so. There is no mention of "the public" or "publication" anywhere in the FOIA's remedial provision. *See Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996) ("While it might seem strange for Congress to command agencies to 'currently publish' or 'promptly publish' documents, without in the same statute providing courts with power to order publication, we think that is exactly what Congress intended. Section 552(a)(4)(B) authorizes district courts to order the 'production' of agency documents, not 'publication.'"). Thus, as the D.C. Circuit has properly recognized, "a court has no authority under FOIA to issue an injunction mandating that an agency 'make available for public inspection' documents subject to the reading room provision." *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 846 F.3d 1235, 1243 (D.C. Cir. 2017) ("*CREW*"). As *CREW* explained, the requirement for *individual* relief—rather than relief for the general public—is based on the structure, purpose, and text of the FOIA.

If Congress had intended to empower plaintiffs to enforce the electronic reading room provisions on behalf of the public, it would have stated so clearly. Instead, the language of the

FOIA's remedial provision makes clear that the final clause ("improperly withheld from the complainant") modifies the entire provision such that a court may order production of any improperly withheld records to the complainant but not the general public.  When Congress created the FOIA's remedy provision, it was responding to the fact that a prior public-disclosure law included "no remedy available to a citizen who has been wrongfully denied access to the Government's public records," H.R. REP. NO. 89-1497, at 5 (1966), as reprinted in 1966 U.S.C.C.A.N. 2418, 2422, and Congress fixed the problem by adding to the FOIA "a judicially enforceable public right to secure [] information from possibly unwilling official hands." *See EPA v. Mink*, 410 U.S. 73, 80 (1973).

The Second and Ninth Circuit, by holding that the remedies for a FOIA plaintiff's Section 552(a)(2) claim include an order to post records online, created a private right of action by any FOIA plaintiff to order production on behalf of the public.  *New York Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 220–22 (2d Cir. 2021) ("*NYLAG*"); *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 935 F.3d 858, 875–76 (9th Cir. 2019).  But it would be anomalous to presume that Congress had created a private right of action to vindicate the public's interests because a plaintiff's standing under the FOIA is premised on the *plaintiff's own interest* in receiving the information that was the subject of its FOIA request, not on the generalized interest of other members of the public in obtaining information.  *See Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (noting that the FOIA redresses the injury of those who "sought and were denied specific agency records"); *see also Kennecott*, 88 F.3d at 1203 ("Providing documents to the individual fully relieves whatever informational injury may have been suffered by that particular complainant; ordering publication goes well beyond that need.").  Moreover, FOIA remedies are expressly couched in terms of "jurisdiction," 5 U.S.C. § 552(a)(4)(B), and creating

an extra-statutory FOIA remedy would run afoul of the rule that a "federal court is powerless to create its own jurisdiction." *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990).

Further, the Second and Ninth Circuits' reading of Section 552(a)(4)(B) to permit *any* injunction as long as the injunction has the effect of enjoining the agency from withholding agency records, would give no operative force to the remainder of the sentence, which identifies the particular type of injunction that courts should issue, *i.e.*, one that "order[s] the production of any agency records improperly withheld from the complainant," 5 U.S.C. § 552(a)(4)(B), and would create a substantial amount of surplusage. *See Ratzlaf v. United States*, 510 U.S. 135, 140–41 (1994) (judges should hesitate to treat statutory terms as surplusage). The Ninth Circuit premised its holding on the conclusion that limiting relief to FOIA plaintiffs would render Section 552(a)(4)(B)'s first clause that allows courts to "enjoin the agency from withholding agency records" superfluous. *Animal Legal Def. Fund*, 935 F.3d at 870. The Ninth Circuit's reading, however, actually creates a greater surplusage problem because it provides no substantive meaning to Section 552(a)(4)(B)'s second clause that empowers courts with jurisdiction "to order production" of records to requestors. *See NYLAG*, 987 F.3d at 228 (Park, J., dissenting) ("Under NYLAG and the majority's reading, however, the first phrase swallows the second; if authority 'to enjoin the agency from withholding records' means courts may require agencies to make records available in any number of ways, Congress had no reason to also give courts the authority 'to order the production' of such records to 'the complainant.'").[1]

Moreover, the Second and Ninth Circuits' reading would ignore the FOIA provisions that require exhaustion through the submission of individual requests for records under all of FOIA's

---

[1] The dissenting opinion in *NYLAG* provides a thorough and clear explanation of why the Second and Ninth Circuits' conclusion is contrary to the text, structure, and history of the FOIA statute. *See NYLAG*, 987 F.3d at 226–33.

access provisions, including the reading room provision.  *See* 5 U.S.C. §§ 552(a)(6)(A), (C)(i). For instance, if an agency decides to comply with an individual's reading room request, the FOIA provides that "the records shall be made promptly available *to such person making such request*," not the general public.  *Id.* (emphasis added).

Thus, NARA believes the D.C. Circuit has the most persuasive view of the issue of available remedies for enforcement of the reading room provisions in Section 552(a)(2).  The D.C. Circuit's view ensures that the Court's relief redresses the injury that gave rise to the need for the FOIA's judicial-review provision, *i.e.*, the withholding of records from the individual requester. As the D.C. Circuit has explained, "Section 552(a)(4)(B) is aimed at relieving the injury suffered by the individual complainant, not by the general public" because "[i]t allows district courts to order 'the production of any agency records improperly withheld from the complainant,' not agency records withheld from the public."  *CREW*, 846 F.3d at 1243 (quoting *Kennecott*, 88 F.3d at 1203).  The D.C. Circuit's approach also gives effect to the FOIA provisions that contemplate enforcement of reading room obligations through individually submitted requests, and that explicitly provide for compliance with such requests by making records available "to such person making such request."  5 U.S.C. §§ 552(a)(6)(A), (C)(i).  None of the above is true for the Second and Ninth Circuits' interpretation.

For these reasons, NARA urges this Court to hold that it would lack jurisdiction under Section 552(a)(4)(B) to order NARA to host the Zapruder Transparencies on its website even if the Court were to later determine that such records had been improperly withheld.

III.    **Plaintiff Has Not Shown that FOIA's Electronic Reading Room Provision Applies to the Records Sought**

There is no basis in Plaintiff's Original Complaint or in Plaintiff's Response for this Court to find that the records sought in Plaintiff's FOIA Action fall within the statutory framework of the

6

FOIA's electronic reading room provision. Plaintiff does not dispute (1) that the Zapruder Transparencies were created long before November 1, 1996, and (2) that the Zapruder Transparencies were not created by NARA. Thus, under a plain reading of 5 U.S.C. § 552(a)(2), Plaintiff has failed to state a claim for which relief can be granted.

Plaintiff cites to no authority holding that federal agencies are required to proactively disclose records created before November 1, 1996, even if those records are "frequently requested" per 5 U.S.C. § 552(a)(2)(D). Plaintiff cites to *Animal Legal Defense* for support, (Resp. at 11–12), but even Plaintiff's chosen quote clearly states that the requirements of the electronic reading room provision only apply to "proactively disclosed records created after November 1, 1996." *Animal Legal Defense*, 935 F.3d at 877 (discussing the Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, 110 Stat. 3048 (1996)).

To be clear, NARA does not dispute the existence and enforceability of the "Rule of 3" as codified in the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 (2016). That is, NARA does not dispute that one of the categories of records that must be proactively disclosed in an electronic format are those records which have been "previously released under § 552(a)(3) and requested three or more times." *Animal Legal Defense*, 935 F.3d at 877 (citing 5 U.S.C. § 552(a)(2)(D)). NARA's position is simply that these proactive disclosure requirements only apply to records created by NARA itself on or after November 1, 1996. NARA's position is consistent with the discussion of these provisions in *Animal Legal Defense* as well as the House Report accompanying the 1996 Amendments. Moreover, NARA's position makes the most sense from both a practical and a policy perspective. Plainly, Congress did not intend the electronic disclosure requirements enacted in 1996 to apply to all hard copy records dating back to the dawn of the United States. If Congress had so intended, it would have said so clearly.

The statutory language, as amended in 1996, supports NARA's interpretation. At that time, Section 552(a)(2) provided in relevant part:

> (a) Each agency shall make available to the public information as follows:
>
> . . .
>
> (2)    Each agency, in accordance with published rules, shall make available for public inspection and copying—
>
> . . .
>
> [subsections A–D listing the four categories of records subject to proactive disclosure and subsection E calling for the creation of an index]
>
> . . .
>
> unless the materials are promptly published and copies offered for sale. *For records created on or after November 1, 1996, within one year after such date, each agency shall make such records available, including by computer telecommunications or, if computer telecommunications means have not been established by the agency, by other electronic means.*

H.R. REP. NO. 104-795, at 33 (1996), as reprinted in 1996 U.S.C.C.A.N. 3448, 3463 (1996 WL 532690) (emphasis in original to indicate new matter), NARA's Motion APP. 44. As indicated, the date-limiting proviso was added as part of the new electronic disclosure requirement. The language applied equally to all four categories of proactive disclosure records and was clearly intended to limit the scope of such records for which *electronic* disclosure was now required.

Plaintiff contends to the contrary that the proviso's language "sets a timeline for agencies to make new records available, not a limitation on which records qualify under the Rule of 3." Resp. at 12. Plaintiff's interpretation is at odds with the plain language of the statute as it was enacted in 1996 and directly contradicted by the House Report discussing the amendment. Again, the House Report provides:

> This section of the bill requires that materials, ***such as*** agency opinions and policy statements, which an agency must "make available for public inspection and copying," pursuant to Section 552(a)(2), ***and which are created on or after November 1, 1996***, be made available by computer telecommunications, and in hard copy, within one year after the date of enactment.

H.R. REP. NO. 104-795, at 20 (emphasis added), NARA's Motion APP. 31. To follow Plaintiff's approach, the Court would have to ignore the "and" emphasized in the excerpt above. That "and" indicates Congressional intent that the electronic disclosure requirements would only apply to records that qualify under one of the four categories of 5 U.S.C. § 552(a)(2)(A)–(D) **_and_** were created on or after November 1, 1996. If, as Plaintiff suggests, the proviso is simply a timeline that only applies to records created on or after November 1, 1996, then agencies would be left with no timeline at all for records created before that date. Plaintiff's unwieldy interpretation would therefore render the statute practically impossible to apply or enforce with respect to the very records Plaintiff seeks in this case.

Finally, Plaintiff's Response does not address or attempt to distinguish the DOJ Guidance interpreting the scope of the electronic reading room requirements as excluding records generated before November 1, 1996, and records generated outside a given agency. Plaintiff has not identified even a single example of an agency being required to electronically host a frequently requested record created before November 1, 1996, or any record created by a third party.[2] In fact, the plaintiff in *NYLAG* sought only "the public production of [records] dating back to November 1, 1996," and nothing prior. 987 F.3d at 225. There is simply no precedent, and indeed, no legal basis for this Court to grant Plaintiff the relief he seeks. Plaintiff's FOIA Action must therefore be dismissed under Rule 12(b)(6).

---

[2] Plaintiff cites *Unión Del Pueblo* for the faulty proposition that "the electronic reading-room duty applies whenever the statutory criteria are met," (Resp. at 12), but that case specifically dealt with FEMA's own records created after January 1, 2019, not third-party records from sixty years ago. *Unión Del Pueblo*, 2023 WL 6014397, at *1. Moreover, there is no discussion of frequently requested records, the Rule of 3, or 5 U.S.C. § 552(a)(2)(D) anywhere in *Unión Del Pueblo*, despite Plaintiff's mistaken claim to contrary. *Cf.* Resp. at 9.

IV.    **Conclusion**

For the foregoing reasons and those stated in NARA's Motion, NARA respectfully requests the Court grant NARA's Motion to Dismiss, dismiss Plaintiff's FOIA Action, and grant NARA any such further relief to which it may be entitled.

DATE: December 19, 2025                                Respectfully Submitted,

BRETT SHUMATE
Assistant Attorney General

SCOTT BOLDEN
Director

*/s/ Matthew D. Tanner*
MATTHEW D. TANNER
DC Bar ID. 90030614
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530
Matthew.D.Tanner@usdoj.gov
Telephone:    (202) 305-9847
Facsimile:    (202) 307-0345

**ATTORNEYS FOR DEFENDANT THE
NATIONAL ARCHIVES AND RECORDS
ADMINISTRATION**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2025, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Matthew D. Tanner*
Matthew D. Tanner

10